AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Precision Location Information; Subscriber &
Transactional Records; Cell Site Information; Pen
Register & Trap-and-Trace for Phone # (937) 560-9879

Case No.  4:22 MJ 3176 NCC

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ **New Jersey** _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

*Applicant's signature*

**Task Force Officer Wesley McCormick, ATF**
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____ 06/23/2022

*Judge's signature*

City and state: _____ St. Louis, MO

**Honorable Noelle C. Collins, U.S. Magistrate Judge**
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF AN APPLICATION | ) | |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR   A   WARRANT   TO   OBTAIN | ) | No.  4:22 MJ 3176 NCC |
| LOCATION INFORMATION, INCLUDING | ) | |
| PRECISION  LOCATION  INFORMATION; | ) | |
| SUBSCRIBER   AND   TRANSACTIONAL | ) | **FILED UNDER SEAL** |
| RECORDS;  CELL  SITE  INFORMATION; | ) | |
| AND FOR A PEN REGISTER AND TRAP | ) | SIGNED AND SUBMITTED TO THE COURT FOR |
| AND   TRACE   DEVICES   FOR   PHONE | ) | FILING BY RELIABLE ELECTRONIC MEANS |
| NUMBER (937) 560-9879. | ) | |

## AFFIDAVIT

I, Wesley McCormick, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant and order pursuant

to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated

with  a  cellular  telephone  (937)  560-9879  (hereinafter  referred  to  as  the  "subject  cellular

telephone")  to  require  Metro  PCS,  a  wireless  telephone  service  provider  headquartered  at  4  Sylvan

Way,  Parsippany,  New  Jersey  07054  (hereinafter  "the  Provider"),  and/or  any  service  providers

reflected  in  Attachment  A,  to  include  providers  of  any  type  of  wire  and/or  electronic

communications,  and  any  other  applicable  service  providers,  to  disclose  to  the  United  States

location  information,  including  precision  location  information,  transactional  and  subscriber  data

and cell site location information, and the installation and use of other pen register and trap and

trace devices associated with the subject cellular telephone, as described in Attachment B to the

requested warrant and order.

2.      I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), and have been since May 2022.  I have been employed by the St. Louis

1

Metropolitan Police Department since October 2015.  I am currently assigned to ATF's St. Louis Group IV in the Kansas City Field Division, and I am responsible for investigating federal firearms violations and federal controlled substance violations.  I have conducted numerous investigations involving both the illegal narcotics and the criminal possession and use of firearms.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

5.      ATF has probable cause to believe that the subject cellular telephone is currently being used by **Paris MARTIN**, who is charged with felon in possession of a firearm, in violation of Title 18 United States Code, Section 922(g)(1), in Case No.  4:22-CR00331 HEA NAB, and whose whereabouts are currently unknown.

**BACKGROUND CONCERNING WIRELESS PROVIDERS**

2

6.     Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long-distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c.     Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").   When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.      Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.  In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).  The providers may also have payment information for the account, including the dates

and times of payments and the means and source of payment (including any credit card or bank account number).

        f.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.  This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.  In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.  Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

        g.      In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States.  The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.     The United States, including ATF, is conducting a criminal investigation of **MARTIN** regarding the commission of the subject offenses.

8.     Beginning in June of 2022, I opened an investigation into Paris **MARTIN** believed of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

9.     On April 14, 2022, St. Louis Metropolitan Police Department Officers were on routine patrol in the Walnut Park West Neighborhood. While traveling west in the 5900 block of Lucille the officers observed **MARTIN** standing on the front porch of the residence at 5959 Lucille. One of the officers had prior experience with **MARTIN**, and was aware that he had an active "Wanted-Contact and Advise" from the St. Louis Metropolitan Police Department's Homicide Division.

10.     The officers exited their patrol vehicle and asked **MARTN** to walk to the sidewalk and speak with them. **MARTIN** complied with the officers' request and began to approach them on the sidewalk. As **MARTIN** approached officers observed a bulge in his front hoodie pocket. **MARTIN** placed his right hand into his hoodie pocket as he approached the officers. Officers, believing **MARTIN**  to be armed, ordered him to remove his hand. Officers conducted a pat down of **MARTIN** for weapons, and located a Taurus brand pistol, model PT111 G2, 9mm Luger caliber, serial number TKT11498, in **MARTIN's** front hoodie pocket. The pistol was loaded with 1 round in the chamber and a magazine loaded with 14 rounds. Officers rendered the weapon safe and placed **MARTIN** in handcuffs. Officers had previous knowledge that **MARTIN** was a convicted felon, and advised him he was under arrest for "Unlawful Possession of a Firearm."

6

11.     Officers Mirandized **MARTIN,** and **MARTIN** stated he understood his rights. **MARTIN** stated he knew he was not allowed to be in possession of a firearm. **MARTIN** stated he lives in Walnut Park, and people have tried to kill him in the past.

12.     Officers conducted a criminal history check of **MARTIN** and confirmed that he has a firearm status of "Disqualified" in the state of Missouri.

13.     The firearm located on **MARTIN** was later submitted to the St. Louis Metropolitan Police Department Crime Laboratory for testing and analysis. The lab identified the firearm as a Taurus, model PT111 G2, 9mm Luger caliber pistol, serial number TKT11498. The lab noted the firearm was test fired and functioned as designed, and no mechanical defects were observed.

14.     I learned of **MARTIN's** arrest and opened an investigation into **MARTIN** for federal firearms law violations. I conducted a criminal history record check on **MARTIN** revealing felony convictions for burglary and unlawful possession of a weapon.

15.     I located and reviewed a Facebook page with the profile name "Lucille Pap." This Facebook page was open and able to be viewed by the public. In reviewing the Facebook page, I observed several pictures of an individual I recognized to be **MARTIN**. I observed several pictures of **MARTIN** possessing what, in my training and experience, I believed to be firearms.

16.     On June 8, 2022, a federal grand jury returned an indictment against **MARTIN** for being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), in Case No. 4:22-CR-00331 HEA NAB.

17.     During my investigation into **MARTIN**, I observed **MARTIN** to be associated with the residence located at 5959 Lucille Ave, St. Louis, Missouri. This is the address **MARTIN** was arrested at on April 14, 2022, along with the address he provided to officers as his residence address.

18.      On May 27, 2022, there was a shooting that occurred at 5959 Lucille, resulting in a homicide. Present at the scene was **MARTIN**. Following the homicide, the residence at 5959 Lucille was condemned by the St. Louis building inspector, and the occupants were forced to evacuate the property. The residence has since been boarded up as to not allow any squatters inside the condemned residence.

19.      Investigation revealed **MARTIN** is associated with the residence located at 6009 Shulte Ave, St. Louis, Missouri. **MARTIN** has also utilized the address 6011 Thekla Ave, St. Louis, Missouri, during police encounters, along with it being listed as his residence address in the Missouri Department of Revenue.

20.      To date, surveillance operations to establish where **MARTIN** is currently residing have been unsuccessful. I have conducted surveillance at 6009 Shulte, along with 6011 Thekla, and have not been able to locate **MARTIN**. Law enforcement databases do not indicate any vehicles registered to **MARTIN** which could assist in garnering his location.

21.      During the April 14, 2022, arrest **MARTIN** provided officers with the cellular telephone number (937) 560-7998. Investigation into this number revealed no results. Further investigation revealed **MARIN** provided cellular telephone number (937) 560-9879 (the **subject cellular phone**) during a prior arrest on November 12, 2020. It is unknown if officers mistakenly transposed the last four digits of the phone number during the April 14, 2022 arrest, or if **MARTIN** intentionally gave the wrong number to officers to be deceitful.

22.      Investigation into the **subject cellular phone** number revealed calls from an inmate at the St. Louis City Justice Center placed to the **subject cellular phone** number. In a call placed June 6, 2022 to the **subject cellular phone** number from an inmate. The inmate refers to the individual utilizing the **subject cellular phone** number as "Pap." I know "Pap" to be the moniker

8

utilized by **MARTIN.** The individual utilizing the **subject cellular phone** number speaks about his residence being recently boarded up and him now being homeless. This is consistent with **MARTIN's** last known address of 5959 Lucille Ave. being boarded up. I played the jail call for St. Louis Metropolitan Police Officer Dylan Mitchem, who has arrested **MARTIN** twice in the past. Officer Mitchem advised me he recognized the voice of the individual utilizing the **subject cellular phone** number to be **MARTIN**.

23.    Based on the above information I believe the **subject cellular phone** number is associated to a phone under **MARTIN's** control. I know most individuals keep their cellular phones on their person or in areas they control. I believe it is reasonable that **MARTIN** is currently in possession of the **subject cellular phone**.

24.    Based on the facts as set forth herein, there is probable cause to believe that **MARTIN** has violated Title 18, United States Code, Section 922(g)(1). **MARTIN** was charged with these crimes on June 8, 2022 and is subject of an arrest warrant issued on June 8, 2022. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting **MARTIN**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## CONCLUSION

25.    Based on the above information, there is probable cause to believe that the subject cellular telephone is being used by **MARTIN**, who is charged with felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), in Case No.  4:22-CR-00331 HEA NAB, and whose whereabouts are currently unknown.  There is likewise probable cause to conclude that locating and monitoring the movements of the subject cellular telephone will lead to the location and arrest of **MARTIN**.

9

26.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency, and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

27.     The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

I state under penalty of perjury that the foregoing is true and correct

6/23/22
DATE

WESLEY MCCORMICK
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this _____ day of February, 2022.

/ 23rd, June 2022

HONORABLE NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

10

<u>**ATTACHMENT A**</u>

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &

B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a

Warrant and Order requiring a telecommunications service provider reflected in Part II of this

Attachment A, to disclose the records and other information concerning the account described in

Part I of this Attachment A.

**I.      The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| Metro PCS | (937) 560-9879<br><br>(the subject cellular telephone) | unknown | Paris **MARTIN** |

**II.     The Provider**

Records and information associated with the subject cellular telephone that is within the

possession, custody, or control of Metro PCS**,** and other applicable service providers reflected on

the list contained in this Attachment A**,** including information about the location of the subject

cellular telephone if it is subsequently assigned a different call number.

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone | Spectrum |
| ACN, Inc. | Empire Paging | Exchange | Sprint |
| ACS | Ernest Communications | Mobile Communications | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mound Bayou Telephone | Star Telephone Company |
| Afford A Phone | FDN Communications | Co. | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Mpower Communications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | Navigator | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Telecommunications | Talk America |
| Altice USA | Focal Communications | NE Nebraska Telephone | Tele Touch Comm |
| AmeriTel | Frontier Communications | Netlink Comm | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Network Services | Telepak |
| Arch Communication | Gabriel Comm | Neustar | Telispire PCS |
| AT&T | Galaxy Paging | Neutral Tandem | Telnet Worldwide |
| AT&T Mobility | Global Communications | Nex-Tech Wireless | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | Nexus Communications | Time Warner Cable |
| Big River Telephone | Global Naps | NII Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | North Central Telephone | Total Call International |
| Blackberry Corporation | Grand River | North State Comm | Tracfone Wireless |
| Brivia Communications | Grande Comm | Northcoast Communications | Trinity International |
| Broadview Networks | Great Plains Telephone | Novacom | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Ntera | United Telephone of MO |
| Budget Prepay | Heartland Communications | NTS Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | Oklahoma City SMSA | US Cellular |
| Call Wave | Huxley Communications | ONE Communications | US Communications |
| Cbeyond Inc. | iBasis | ONSTAR | US LEC |
| CCPR Services | IDT Corporation | Optel Texas Telecom | US Link |
| Cellco Partnership, | Illinois Valley Cellular | Orion Electronics | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PacBell | USA Mobility |
| Cellular One | Integra | PacWest Telecom | VarTec Telecommunications |
| Cellular South | Iowa Wireless | PAETEC Communications | Verisign |
| Centennial Communications | IQ Telecom | Page Plus Communications | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Page Mart, Inc. | Verizon Wireless |
| Charter Communications | Leap Wireless International | Page Net Paging | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Panhandle Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | Peerless Network | Vonage Holdings |
| Cimco Comm | Logix Communications | Pineland Telephone | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | PhoneTech | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | PhoneTel | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Preferred Telephone | Western Wireless |
| Com-Cast Cable Comm. | Madison River | Priority Communications | Westlink Communications |
| Commercial Communications | Communications | Puretalk | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | RCN Telecom | Windstream Communications |
| Cox Communications | Company | RNK Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | QWEST Communications | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Sage Telecom | XO Communications |
| DBS Communications | Marathon Comm | Seren Innovations | Xspedius |
| Delta Communications | Mark Twain Rural | Shentel | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Sigecom LLC | YMAX Communications |
| Dobson Cellular | Metro PCS | Sky Tel Paging | Ztel Communications [1] |
| | Metro Teleconnect | Smart Beep Paging | |
| | | Smart City Telecom | |

[1] Last Update: 03/17/2019

**ATTACHMENT B**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

## I.  PRECISION LOCATION INFORMATION

### A.  Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from June 23, 2022, to August 6, 2022, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

### B.  Information to Be Seized by the United States

All information described above in Part I, Section A that will assist in arresting MARTIN, who was charged with violating Title 18, United States Code, Section 922(g)(1) on April 14, 2022, is the subject of an arrest warrant issued on June 8, 2022, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## II.  CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

1

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.      All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.      Length of service;

3.      All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.      Subscriber information available for any originating telephone number;

5.      Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

2

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors and orientations;

(i)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(j)      historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(k)      Time Difference of Arrival (TDOA), and,

(l)      Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

3

### III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

   a.   IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

   b.   Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

   c.   IP addresses of any websites or other servers to which the subject cellular telephone connected;

   d.   Source and destination telephone numbers and email addresses;

4

e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2. The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5. Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller

5

identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency, and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.